IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGO L. ROYER, | ) | Case No. 3:22-cv-00061 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW D. ROBERTSON, | ) | |
| individually and in his official capacity as | ) | |
| a police officer of the City of DuBois, | ) | |
| BLAINE CLARK, individually and in his | ) | |
| official capacity as a police officer of the | ) | |
| City of DuBois, LANCE THOMPSON, | ) | |
| individually and in his official capacity as | ) | |
| a police officer of the City of DuBois, | ) | |
| JOHN DOE, individually and in his | ) | |
| official capacity as a police officer of the | ) | |
| City of DuBois, and CITY OF DUBOIS, a | ) | |
| municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Defendants City of Dubois, Corporal Matthew D. Robertson, Chief of Police Blaine Clark, and Officer Lance Thompson's ("Defendants") Motion to Dismiss Plaintiff Margo L. Royer's ("Ms. Royer") Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15). For the following reasons, the Court **DENIES** Defendants' motion in part and **GRANTS** Defendants' motion in part.

I.      Jurisdiction and Venue

The Court has subject-matter jurisdiction over Ms. Royer's 42 U.S.C. Section 1983 claims because they arise under federal law.  *See* 28 U.S.C. §§ 1331, 1343(a)(3). This Court also has subject-

matter jurisdiction over Ms. Royer's Pennsylvania state law claims because they arise from the same case or controversy as the constitutional claims. *See id.* § 1367.

Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this suit occurred in the Western District of Pennsylvania.

## II.     Background

The following facts are drawn from Ms. Royer's First Amended Complaint (the "Amended Complaint"). (ECF No. 10). The Court construes the Amended Complaint in the light most favorable to Ms. Royer, and takes the factual allegations therein as true, as it must in ruling on a motion to dismiss.

On April 27, 2021, Ms. Royer—a sixty-year-old military veteran—was taken by ambulance to the emergency room at Penn Highlands Hospital (the "Hospital"). (ECF No. 10 ¶ 21–22). She arrived around 11:00 A.M. and was given pain medication and an MRI to address her chronic back and kidney pain. (*Id.* ¶¶ 23–25).

When Ms. Royer was discharged around 6:50 P.M., she stopped by the front atrium area of the hospital to change her insurance information and request a copy of her medical records. (*Id.* ¶¶ 33–34). While there, she was told that a van that was supposed to drive her home had left at 6:00 P.M. and would not be returning. (*Id.* ¶¶ 31, 33).

Shortly thereafter, Officer Lance Thompson ("Officer Thompson") arrived with another officer and told Ms. Royer that she would have to walk home. (*Id.* ¶ 38). After ordering Ms. Royer to stand, Officer Thompson grabbed Ms. Royer's phone from her hand and began scrolling through it, inquiring about various names in her phone and questioning why she was not calling them for a ride home. (*Id.* ¶ 40).

The next day, after returning home, Ms. Royer called both the Hospital and the DuBois Police Department to complain about the way in which she was treated. (*Id.* ¶¶ 41–43). During one of those calls, Ms. Royer spoke to Corporal Matthew Robertson ("Corporal Robertson"), who told her she "[was]n't wanted anywhere" she went. (*Id.* ¶ 43).

On April 29, 2021, Ms. Royer received a phone call from the Hospital's medical records department informing her that her medical records were available to be picked up in person. (*Id.* ¶ 44). After being assured it was okay to come and retrieve her medical records, Ms. Royer drove to the Hospital. (*Id.* ¶ 46). When she arrived, Ms. Royer was given several forms to complete before she could obtain her records. (*Id.* ¶¶ 47–48). Ms. Royer took the forms to her vehicle in the parking lot and began filling them out. (*Id.* ¶ 49).

While in her car, Ms. Royer noticed Corporal Robertson approaching her vehicle on foot. (*Id.*). Corporal Robertson knocked on the driver's side window, and Ms. Royer continued to fill out her paperwork. (*Id.* ¶ 50). Corporal Robertson then parked his service vehicle perpendicular to Ms. Royer's rear bumper—effectively blocking her into the parking space she occupied. (*Id.* ¶¶ 51–53).

Shortly thereafter, Corporal Robertson began striking Ms. Royer's windshield with his fists and threatened to injure her if she did not open her car door. (*Id.* ¶¶ 53–54). He then began deflating Ms. Royer's tires. (*Id.* ¶ 55).

When Ms. Royer unlocked her car door, Corporal Robertson grabbed her by her shirt, jerked her out of the car, and threw Ms. Royer across the parking lot. (*Id.* ¶ 57). He then began physically striking Ms. Royer, pushing her back into in the pavement multiple times and causing her blouse to rip open. (*Id.* ¶ 58).

Officer John Doe ("Officer Doe") and Chief of Police Blaine Clark ("Chief Clark") were also present at the scene of this incident but did not intervene or otherwise participate in Ms. Royer's arrest. (*Id.* ¶¶ 117, 127).

After handcuffing Ms. Royer, Corporal Robertson continued to slam her into the pavement, his service vehicle, and Ms. Royer's vehicle. (*Id.* ¶ 60). Ms. Royer suffered deep bruises on her right arm from this incident. (*Id.* ¶ 62). She was also diagnosed with a traumatic ocular injury, which her physician has opined was caused by the trauma she sustained from her encounter with Corporal Robertson.[1] (*Id.* ¶ 63–64). Ms. Royer's PTSD—which she suffered from prior to the subject incident—has also worsened. (*Id.* ¶ 65).

Ms. Royer was formally charged with trespass in the Court of Common Pleas of Clearfield County in May 2021, but those charges were dismissed. (*Id.* ¶ 69).

On April 26, 2022, Ms. Royer, proceeding pro se, filed a complaint against Defendants in the United States District Court for the Western District of Pennsylvania. (ECF No. 1). Defendants moved to dismiss Ms. Royer's complaint on June 23, 2022. (ECF No. 4).

After retaining counsel, Ms. Royer filed a motion for leave to file an amended complaint on July 15, 2022, (ECF No. 8), and the Court granted her motion on July 18, 2022. (ECF No. 9). Ms. Royer filed her Amended Complaint on July 20, 2022, asserting the following nine counts against Defendants:

(1) Excessive Use of Force in violation of the Fourth Amendment against the City of DuBois and Corporal Robertson in his individual capacity (ECF No. 10 ¶¶ 71–81);
(2) False Arrest in violation of Pennsylvania law against the City of DuBois and Corporal Robertson in his individual capacity (*Id.* ¶¶ 82–85);

---

[1] Ms. Royer's vision was impacted so severely that she has been approved for State Disability Retirement. (*Id.* ¶ 67).

4

(3) False Imprisonment in violation of Pennsylvania law against the City of DuBois and Corporal Robertson in his official and individual capacities (*Id.* ¶¶ 86–91);

(4) Section 1983 Municipal Liability for Failure to Properly Train, Supervise, and Discipline against the City of DuBois (*Id.* ¶¶ 92–101);

(5) Assault and Battery in violation of Pennsylvania law against Corporal Robertson in his official and individual capacities (*Id.* ¶¶ 102–03);

(6) Violation of First, Fourth, and Fourteenth Amendments under Section 1983 against the City of DuBois, Officer Thompson in his official and individual capacities, and Corporal Robertson in his official and individual capacities (*Id.* ¶¶ 104–18);

(7) Abuse of Process in violation of Pennsylvania law against the City of DuBois, Corporal Robertson in his individual capacity, and Chief Clark in his official and individual capacities (*Id.* ¶¶ 119–25);

(8) Failure to Intervene under Section 1983 against Officer John Doe in his individual capacity and Chief Clark in his individual capacity (*Id.* ¶¶ 126–28); and

(9) Intentional Infliction of Emotional Distress in violation of Pennsylvania law against Corporal Robertson in his official capacity (*Id.* §§¶¶ 129–35).

On September 2, 2022, Defendants filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Ms. Royer's Amended Complaint for failure to state a claim. (ECF No. 15).[2] Ms. Royer filed her response to Defendants' motion to dismiss on September 16, 2022. (ECF No. 18).[3]

## III.   Legal Standard

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)).

---

[2] Defendants filed a brief in support of this motion to dismiss at ECF No. 16.
[3] Ms. Royer filed a brief in support of her opposition at ECF No. 19.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[4] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("[M]ere restatements of the elements of [a] claim . . . are not entitled to the assumption of truth.") (citation omitted).

Third, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV.    Scope of the Record

As an initial matter, the parties' reliance on two documents throughout their briefing warrants the Court's attention. Defendants point to the Police Incident Report (the "Police Report") regarding the subject incident to bolster several of their arguments in their brief. (*See* ECF No. 16 at 6, 8). Ms. Royer, in her brief, cites to portions of testimony contained in the

---

[4] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach. *See id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

Transcript of Proceedings for the Preliminary Hearing (the "Hearing Transcript") held in May 2021 pertaining to the charges arising from the subject incident. (*See* ECF No. 19 at 5). Defendants attached the Police Report as an exhibit to their Motion to Dismiss, (ECF No. 15-3), and Ms. Royer attached the Hearing Transcript as an exhibit to her response. (ECF No. 20).

The Court must now determine whether consideration of these two documents is proper at this stage of the proceeding. When ruling upon a motion to dismiss pursuant to Rule 12(b)(6), the Court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Put differently, the Court "may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, such as a document that is integral to or explicitly relied upon in the complaint." *Jones v. Middletown Twp.*, 253 F. App'x 184, 187 (3d Cir. 2007).

Such materials also include "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). These materials may be considered because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice . . . and has relied upon [those] documents in framing the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2004) (internal quotation marks and citation omitted). Where these requirements are not satisfied, the Court may not consider "extraneous evidence submitted" by the parties when ruling on a motion to dismiss. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

Regarding the Police Report, Ms. Royer did not attach it to her Amended Complaint. However, Defendants argue that because "Plaintiff identified" the Police Report "in her Original Complaint," the Court can properly consider it at this stage. (ECF No. 16 at 8). But it "is well-established that an amended pleading supersedes the original pleading[,]" and "[i]f certain facts or admissions from the original complaint become *functus officio*" by way of amendment, "they cannot be considered by the court on a motion to dismiss the amended complaint." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172 (3d Cir. 2013).

Moreover, Ms. Royer's Amended Complaint makes no reference to the Police Report, nor does it "rel[y] upon" the Police Report in any relevant sense. *Jones*, 253 F. App'x at 187; *but cf. Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (considering a purchase and sale agreement between the parties because the complaint was "based on this contract and describe[d] some of its terms").

The Third Circuit has explained that the purpose of allowing courts to consider documents "integral to or explicitly relied upon in the complaint" is to "avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Lum*, 361 F.3d at 221 n.3 (citing *Pension Benefit Guar. Corp.*, 998 F.2d at 1196). But Ms. Royer's Amended Complaint is not based on the Police Report. *See Heller v. Hammerle*, No. 22-01656, 2021 WL 3426807, at *10 n.10 (W.D. Pa. June 30, 2021) ("A document such as a police incident report is not integral to a Section 1983 claim . . . simply because its contents are relevant to a plaintiff's allegations.").

And considering the Police Report in the manner Defendants suggest—to rebut the allegations in Ms. Royer's Amended Complaint—would be improper at the motion-to-dismiss stage. *See Kwanzaa v. Tell*, No. 21-1939, 2022 WL 16756334, at *8 (3d Cir. Nov. 8, 2022) (explaining

that, when considering a motion to dismiss, "the District Court improperly credited the police report that was attached to the complaint over the allegations in [the plaintiff's] complaint. This was error.").

The Police Report also does not qualify as a "public record" within the meaning of the relevant exception. "'[A] police investigation report . . . while it may be available to the public, does not fall into any of the categories identified [by the Third Circuit] in *Pension'* and therefore is not a public record for the purpose of consideration on the Defendants' motion to dismiss." *Heller,* 2021 WL 3426807, at *9–10 (quoting *Hadesty v. Rush Twp. Police Dep't,* CV 3:14-2319, 2016 WL 1039063, at *4 (M.D. Pa. Mar. 15, 2016)). Finally, at this stage, it is not beyond dispute that the Police Report is a truthful description of the subject incident. *See Heller,* 2021 WL 3426807, at *10.

Turning to the Hearing Transcript, neither party specifically argues as to whether it should be considered. But Ms. Royer's brief makes several references to "Exhibit 1," which contains the Hearing Transcript. (ECF No. 19 at 5). Like the Police Report, Ms. Royer did not attach the Hearing Transcript to her Amended Complaint, nor did she rely on the Hearing Transcript in asserting her claims. It is therefore neither integral to nor explicitly relied upon by Ms. Royer in her Amended Complaint. *See id.* (explaining that extraneous evidence should not be considered where it "was neither a subject of nor necessary to [Plaintiff's] statement of claims under Rule 8").

However, the Hearing Transcript qualifies as a "matter of public record" in this context. *Lum,* 361 F.3d at 222 n.3. "Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions of mistrials, letter decisions of government agencies, and published reports of

administrative bodies." *Pension Benefit Guar. Corp.*, 998 F.2d at 1197. And the Third Circuit has recognized that "the transcript of [a] preliminary hearing" falls within the ambit of that definition. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

As such, the Court may consider the Hearing Transcript at this stage of the proceeding, but only to a certain extent. While a court may "take judicial notice" of a document that "constitutes a public record[,]" it "may do so on a motion to dismiss only to establish the existence of the [document], not for the truth of the facts asserted" therein. *Lum*, 361 F.3d at 221 n.3. This is because "a court that examines a transcript of a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment." *Id.* (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999)).

The Court will not, therefore, consider any facts contained in the Police Report or the Hearing Transcript at this stage of the proceeding. To the extent either party's submission of these documents is an implicit request that the Court convert their motion to one for summary judgment, the Court declines to do so.

V.    **Discussion**

A.  **Qualified Immunity**

The Court first addresses Defendants' qualified immunity defense, given the importance of resolving immunity defenses "at the earliest possible stage in the litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Defendants argue that they "were exercising their powers and

executing their duties as DuBois City police officers under Pennsylvania law" and are therefore "entitled to qualified immunity."[5] (ECF No. 16 at 8).

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (internal quotation marks omitted). A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the court answers "yes" to both questions, then the defendants are not entitled to qualified immunity. *See McKee v. Hart*, 436 F.3d 165, 169 (3d Cir. 2006). Because the Court can consider "which of the two prongs of the qualified immunity analysis should be addressed first[,]" *Pearson*, 555 U.S. at 236, it may dismiss claims under the second prong "without ever ruling on" the first. *Camreta v. Greene*, 563 U.S. 692, 705 (2011). When a defendant asserts qualified immunity at the pleading stage, the Court must "determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

---

[5] The Court notes that Defendants' qualified immunity argument, at first blush, appears to only go towards whether Ms. Royer's arrest was reasonably supported by probable cause. For example, Defendants cite to *Malley v. Briggs*, 475 U.S. 335 (1986), for the proposition that "qualified immunity does not apply to a police officer when the officer wrongfully arrests someone on the basis of a warrant only if the officer could not reasonably believe that there was probable cause for the warrant." (ECF No. 16 at 7). Defendants go on to argue that the Police Report "contains statements of witnesses that support the reasonableness of Defendant Cprl. Robertson's actions." (*Id.*). While this could be read as only pertaining to Ms. Royer's claims involving a probable cause determination, other portions of Defendants' brief could be interpreted as making a qualified immunity argument with respect to all constitutional claims. (*See id.* at 8) ("As demonstrated above, Plaintiff has failed to state a claim for any constitutional violations against any of the Defendant police officers. . . . Accordingly, Defendants are entitled to qualified immunity."). Therefore, the Court interprets Defendants' qualified immunity argument to encompass all Section 1983 claims launched against them. In doing so, the Court notes that taking this approach makes no difference in the disposition of any of Ms. Royer's claims.

Ms. Royer asserts seven Section 1983 claims against Defendants: (1) an excessive force claim under the Fourth Amendment at Count I; (2) a municipal liability for failure to properly train, supervise, and discipline claim pursuant to *Monell* at Count IV; (3) a First Amendment retaliation claim at Count VI; (4) a false arrest claim under the Fourth Amendment at Count VI; (5) a false imprisonment claim under the Fourteenth Amendment at Count VI; (6) a malicious prosecution claim under Section 1983 at Count VI; (7) an unreasonable search and seizure claim under the Fourth Amendment in Count VI; and (8) a failure to intervene claim in Count VIII. (ECF No. 10 ¶¶ 71–81, 92–101, 104–118, 126–128).

As the Court will explain further below, the Court finds that Ms. Royer has adequately alleged facts sufficient to support her claims for excessive force, unreasonable search and seizure, and failure to intervene. Because the Court finds, and further analyzes below, that both prongs of the qualified immunity inquiry are satisfied as to these three claims, the Court finds that the Defendants are not entitled to qualified immunity on those claims at this stage. As to the remaining Section 1983 claims, the Court finds that Ms. Royer has failed to allege sufficient facts to form the basis of a constitutional or statutory violation. Therefore, she fails to state a claim upon which relief can be granted, and the first prong of the qualified immunity analysis is resolved in Defendants' favor on those claims. As a result, and explained further below, the Court finds that Defendants are entitled to qualified immunity on Ms. Royer's Section 1983 claims for municipal liability, First Amendment retaliation, false arrest, false imprisonment, and malicious prosecution.

## B.  The Excessive Force Claim

In her Amended Complaint at Count I, Ms. Royer asserts a Section 1983 excessive force claim under the Fourth Amendment against Defendants City of DuBois and Corporal Robertson in his individual capacity. (ECF. No. 10 ¶¶ 71–80). Specifically, Ms. Royer alleges that Corporal Robertson "grabbed her by her shirt collar and violently jerked her out of her car," threw her across the pavement, "began physically striking" her, pushed her into the pavement multiple times to the point her blouse ripped open, and "aggressively body slammed" her "multiple times" into the asphalt and surrounding vehicles while she was handcuffed. (ECF No. 10 at ¶¶ 57–60). Ms. Royer alleges that incident led to "deep bruises on her right arm" as well as "a traumatic ocular injury" that her physician opined was caused by the encounter. (*Id.* at ¶¶ 61, 64).

### 1.  Claim Against Corporal Robertson in His Individual Capacity

Defendants argue, generally, that Ms. Royer's "Amended Complaint contains only boilerplate and conclusory allegations," and thus fails to state a claim upon which relief may be granted. (ECF No. 16 at 6). Ms. Royer counters that the facts alleged show that Corporal Robertson "used excessive force against Ms. Royer which proximately caused her permanent vision loss." (ECF No. 19 at 1). Because Defendants have raised a qualified immunity defense, the Court will consider the doctrine's application while analyzing Ms. Royer's Section 1983 claims.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 182–83 (3d Cir. 2011). Because "[t]he 'seizure' of a 'person' plainly refers

to an arrest[,]" and neither party disputes that Ms. Royer was arrested, the remaining inquiry is whether Ms. Royer's arrest was reasonable. *Torres v. Madrid*, 141 S. Ct. 989, 996 (2011).

In *Graham v. Connor*, the Supreme Court explained that reasonableness is addressed objectively "from the perspective of a reasonable officer on the scene" and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989). The Third Circuit, in addition to *Graham*'s instruction, also assesses the physical injury to the plaintiff, "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). Whether the force was reasonable is a question of fact. *See Graham*, 490 U.S. at 396.

Regarding Defendants' qualified immunity defense, and taking Ms. Royer's allegations as true, the Court concludes that the facts relevant to the first prong of the qualified immunity inquiry establish that Corporal Robertson violated Ms. Royer's "Fourth Amendment right to be free from excessive force." *Neuburger v. Thompson*, 124 F. App'x 703, 705 (3d Cir. 2005). Applying the *Graham* and *Sharrar* factors, the severity of Ms. Royer's alleged crime—trespassing[6]—is quite

---

[6] The Court notes that the Hearing Transcript shows Ms. Royer was charged with harassment, disorderly conduct, and trespassing. (ECF No. 20 at 2). The Defendants note this in their brief, (ECF No. 16 at 6), by reference to the Police Report. Even assuming the Court can take judicial notice of the fact that the Hearing Transcript indicates Ms. Royer was charged with three crimes, the Court's conclusion that the severity of Ms. Royer's alleged crime(s) is quite low remains, as all three charges are non-violent, third-degree misdemeanors. (ECF No. 20 at 2).

low. (*See* ECF No. 10 ¶¶ 69, 85; ECF No. 16 at 10). And although Corporal Robertson was effecting an arrest, law enforcement officers can "effectuate[] a lawful arrest in an unlawful manner." *Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3d Cir. 1997). There is no suggestion in the pleadings that Ms. Royer was armed or posed a threat of violence or risk of flight. She was sixty years old, sitting in a parked car. (ECF No. 10 ¶ 57).[7]

And Ms. Royer alleges that by the time Corporal Robertson pulled her out of her car, he had already deflated her tires and blocked her vehicle into a parking space by parking his service vehicle perpendicular to Ms. Royer's rear bumper. (ECF No. 10 ¶¶ 51, 53, 55, 57). The injury Ms. Royer alleges she suffered from Corporal Robertson's use of force—namely, "a traumatic ocular injury" leading to "permanent damage to her eyes due to the violent jolting"—is severe. (ECF No. 10 ¶¶ 63, 78). Finally, Ms. Royer was the only suspect with whom Corporal Robertson had to contend. In sum, applying the factors espoused in *Graham* and *Sharrar*, Corporal Robertson's conduct was not objectively reasonable under the circumstances.

Therefore, drawing all inferences in Ms. Royer's favor and viewing the situation as a "reasonable officer" would, the Court finds that the allegations in Ms. Royer's Amended Complaint are sufficient to state a Fourth Amendment excessive force claim. *See Olick v. Pennsylvania*, 739 F. App'x 722, 725 (3d Cir. 2018) (finding that, at the pleading stage, the plaintiff sufficiently stated a claim for excessive force where the defendant officer "shoved him across the floor, causing an injury to his shoulder that required medical attention" while the plaintiff was "being arrested for a summary offense" and there was "no suggestion in the pleadings that he

---

[7] Nor do Defendants make any argument in their brief as to whether Corporal Robertson's use of force was reasonable under the circumstances.

was armed, attempting to flee, or posing an immediate threat to the safety of the officer or others"). Striking and repeatedly slamming Ms. Royer into the pavement and surrounding vehicles, even after she was handcuffed, was not objectively reasonable under the circumstances and thus clearly violative of the Fourth Amendment. *See El v. City of Pittsburgh*, 975 F.3d 327, 337 (3d Cir. 2020). The first prong of the qualified immunity inquiry is therefore satisfied.

Qualified immunity's second prong asks whether the constitutional right that was violated was "clearly established." *Saucier*, 533 U.S. at 201. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The central question "is whether the defendant had fair warning that his conduct deprived his victim of a constitutional right." *Schneyder v. Smith*, 653 F.3d 313, 329 (3d Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (internal quotation omitted). "For qualified-immunity purposes, 'clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *James v. N.J. State Police*, 957 F.3d 165, 170 (3d Cir. 2020) (citing *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018).

And the Third Circuit has explained that "[i]n rare cases, a plaintiff may show that a right is clearly established if the 'violation [is] obvious.'" *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)) (internal quotation omitted). "In the excessive-force context, 'obvious cases' are those that obviously violate *Graham v. Connor*[.]" *Id.; see also United States v. Lanier*, 520 U.S. 259, 271 (explaining that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in

question, even though 'the very action in question has [not] previously been held unlawful'")
(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Taking Ms. Royer's allegations as true, the Court finds that her right to be free from the
force imposed upon her by Corporal Robertson in the context of her arrest was clearly established
at the time of the subject incident. Authority from the Third Circuit and its sister circuits bolsters
this conclusion. *See, e.g., El v. City of Pittsburgh*, 975 F.3d 327, 336–37 (3d Cir. 2020) (denying
qualified immunity to an officer who "grabb[ed]" the plaintiff, who was suspected of a minor
offense, and "slam[ed] him into the wall of a vacant storefront and on to the pavement" because
the right to be free from such force "was clearly established by applicable case law"); *see id.* at
339–40 (collecting cases and concluding that they establish "a 'consensus . . . of persuasive
authority' that an unarmed individual who is not suspected of a serious crime—including one
who is verbally uncooperative or passively resists the police—has the right not to be subjected to
physical force such as being grabbed, dragged, or taken down") (quoting *al-Kidd*, 563 U.S. at 742);
*Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) ("We have repeatedly ruled that a police
officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses
gratuitous and excessive force against a suspect who is under control, not resisting, and obeying
commands."); *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341 (1st Cir. 1995)
(finding a Fourth Amendment violation where the plaintiff, who was arrested for trespass and
posed no threat, was "abruptly pulled" from the booth of a restaurant, dragged across the table
"with sufficient force to bruise her legs," then handcuffed and "dragged and carried to a police
cruiser"); *Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015) ("This circuit has further concluded that,
since at least 2009, the use of violence against a subdued and non-resisting individual has been

17

clearly established as excessive, regardless of whether the individual had been placed in handcuffs.").

In any event, the allegations regarding Corporal Robertson's use of force against Ms. Royer, taken as true, constitute conduct that "obviously violate[s] *Graham v. Connor*[.]" *James*, 957 F.3d at 169. It is clearly and objectively unreasonable to strike and repeatedly slam a person suspected of trespass, and to continue to do so even while the suspect is handcuffed. And this is especially true considering that nothing in the pleadings suggests that Ms. Royer was armed, attempting to flee, or posed any threat to Corporal Robertson. Accordingly, Corporal Robertson is not entitled to qualified immunity at this stage,[8] and the Court will deny Defendants' motion to dismiss Ms. Royer's excessive force claim against Corporal Robertson at Count I.

### 2.  Claim Against the City of DuBois

Ms. Royer also asserts her Fourth Amendment excessive force claim against the City of DuBois. (ECF No. 10 at 11). Ms. Royer makes no specific allegations against the city under this particular claim, but she alludes to the fact that Corporal Robertson was acting in his official capacity as a police officer of the City of DuBois when he arrested Ms. Royer. (*See id.* ¶ 73) ("Corporal Robertson was acting within the scope of his employment under the City of DuBois Police Department."); (*Id.* ¶ 79) ("The injuries that Ms. Royer sustained were a direct result from

---

[8] The Court notes that because Defendants have raised the defense of qualified immunity in the context of a Rule 12(b)(6) motion to dismiss, the only facts upon which the Court can properly rely in determining the "objective reasonableness" of the Defendants' conduct are those allegations which are contained in the Amended Complaint. *See Douglass v. Penn Hills Borough,* No. 07-684, 2007 WL 2907891, at *16–17 (W.D. Pa. Oct. 2, 2007). The Court is "mindful of the need to determine immunity questions at the earliest possible stage in the litigation and makes no intimation regarding whether Defendants would, at the conclusion of a limited period of discovery, be able to establish their entitlement to qualified immunity on a motion for summary judgment." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 608 n.6 (D. N.J. 2002).

the malicious physical abuse by Corporal Robertson, committed under his authority as a police officer of the City.").

By the Court's reading of Ms. Royer's Amended Complaint, she asserts her excessive force claim against the City of DuBois on the theory that because Corporal Robertson is an employee of the city, the city is also liable for his actions. But the Supreme Court has explained that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (same). Instead, a "municipality is liable under § 1983 only when the plaintiff shows that a constitutional deprivation emerged from that entity's official policy or custom." *Kean v. Henry*, 523 F. App'x 879, 881 (3d Cir. 2013) (citing *Marran v. Marran*, 376 F.3d 143, 156 (3d Cir. 2004)).

Accordingly, the Court will grant Defendants' motion to dismiss Ms. Royer's Fourth Amendment excessive force claim at Count I against the City of DuBois. Any argument that the City of DuBois is liable under Section 1983 is properly addressed by Ms. Royer's municipal liability claim, which the Court now considers.

### C.  The Municipal Liability for Failure to Properly Train, Supervise, and Discipline Claim

At Count IV of Ms. Royer's Amended Complaint, she alleges a Section 1983 "municipal liability for failure to properly train, supervise and discipline" claim against the City of DuBois. Specifically, Ms. Royer alleges that the city "had policies, practices and customs that condoned and fostered the unconstitutional conduct of Chief Clark and Corporal Robertson"—namely, promoting "customs and usage of force or excessive force where force was not necessary to excuse

their unreasonable actions." (ECF No. 10 ¶¶ 15–16). Defendants argue that Ms. Royer "fails to plead any facts to establish that Defendant City of DuBois engaged in a 'pattern of constitutional violations, which is 'ordinarily necessary' to substantiate such a civil rights claim." (ECF No. 16 at 7).

While the City of DuBois cannot be held liable pursuant to Section 1983 under the theory of *respondeat superior*, "a city or county government . . . is a 'person' for purposes of § 1983 and can be liable [] for its own misconduct." *Monell*, 436 U.S. at 691. This requires a plaintiff to "demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). As the Third Circuit has explained:

> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights"—i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

*Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020).

The Third Circuit has also established a three-part test to determine whether a municipality's failure to train or supervise amounts to deliberate indifference: "it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling;

and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter*, 181 F.3d at 357.

Ms. Royer, in her brief, relies on *Carter* for the proposition that there is "no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss." (ECF No. 19 at 6). While this is true, Ms. Royer's Amended Complaint alleges no facts suggesting that any of the three requirements for a finding of deliberate indifference set forth in *Carter* are satisfied here. Ms. Royer has not alleged any prior constitutional violations by the City of DuBois or its employees that would put the city on notice that new training was necessary. *See Carter*, 181 F.3d at 358 (allowing the plaintiff's *Monell* claim to survive a motion to dismiss where the plaintiff did not identify a particular policy, but plausibly alleged "a pervasive pattern of egregious, unconstitutional conduct by" the defendant police department).

And while Ms. Royer has plausibly pleaded a claim of excessive force, she has failed to allege any facts suggesting that the City of DuBois "had a policy or a custom of permitting its officers to use excessive force[.]" *Olick*, 739 F. App'x at 727. Ms. Royer's general contention that the city implemented such a policy, (ECF No. 10 ¶¶ 15–16), is insufficient. For the purposes of surviving a motion to dismiss, "'[s]imply paraphras[ing] § 1983[,]'" or the judicially-created elements of a particular Section 1983 claim, "does not meet Rule 8's pleading requirements because it fails to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)).

Therefore, the Court finds that Ms. Royer has failed to plausibly plead a municipal liability claim against the City of DuBois. Regarding Defendants' qualified immunity argument, because the Court concludes that Ms. Royer has failed to allege facts sufficient to show the violation of a constitutional right, the Court need not reach the question of whether the right was clearly established. *See Wright v. City of Philadelphia*, 409 F.3d 595, 600 (3d Cir. 2005). Defendants therefore prevail on their qualified immunity defense with respect to Ms. Royer's municipal liability claim, *id.* at 604, and the Court will grant Defendants' motion to dismiss that claim.

### D.  The Section 1983 Claims Contained in Count VI

At Count VI of Ms. Royer's Amended Complaint, she asserts five Section 1983 claims: (1) a First Amendment retaliation claim, (2) a false arrest claim under the Fourth Amendment, (3) a false imprisonment claim under the Fourteenth Amendment, (4) a malicious prosecution claim, and (5) an unreasonable search and seizure claim under the Fourth Amendment. (*See* ECF No. 10 ¶¶ 105–18). Ms. Royer asserts all five claims against the City of DuBois and Officer Thompson and Corporal Robertson in their individual and official capacities. (*See id.* at 18).

As the Court will explain, only the claims against Officer Thompson and Corporal Robertson in their individual capacities warrant particular attention.

### 1.  Claims Against Officer Thompson and Corporal Robertson in Their Official Capacities

The Supreme Court has held that a Section 1983 suit against a municipal officer in her official capacity is, in actuality, a suit against the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). And courts "routinely dismiss § 1983 claims asserted against individual

defendants in their official capacity as being duplicative of a claim against the municipality[.]" *Naviglia v. Borough of Springdale*, No. 15-1029, 2016 WL 4366666, at *13–14 (W.D. Pa. Aug. 16, 2016); *see also M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 418–19 (M.D. Pa. 2014) (collecting cases).

Therefore, because all of Ms. Royer's Section 1983 claims at Count VI are brought against the City of DuBois itself, the Court will grant Defendants' motion to dismiss Count VI as asserted against Officer Thompson and Corporal Robertson in their official capacities.

### 2.   Claims Against the City of DuBois

Ms. Royer's Section 1983 claims contained in Count VI against the City of DuBois all fail to state a claim upon which relief can be granted for the same reason: Ms. Royer has not alleged any facts suggesting that the city had a policy or custom that led to the alleged violation of her Constitutional rights asserted in Count VI. Accordingly, because Ms. Royer has failed to plausibly allege a violation of her constitutional rights in the municipal-liability context, Defendants are entitled to qualified immunity with respect to the Count VI Section 1983 claims advanced against the City of DuBois. The Court will grant Defendants' motion to dismiss Count VI as asserted against the City of DuBois. *See Monell*, 436 U.S. at 691.

Having disposed of the Section 1983 claims in Count VI against Officer Thompson and Corporal Robertson in their official capacities and the City of DuBois, the Court now turns its attention to the viability of those claims as asserted against the Defendant officers in their individual capacities.

### 3.   The First Amendment Retaliation Claim

Ms. Royer alleges that she "was lawfully exercising her First Amendment right to not speak to Corporal Robertson while sitting in her car," and that the "criminal charge made against Ms. Royer was motivated and derived from her right to exercise her First Amendment Constitutionally protected right." (ECF No. 10 ¶¶ 108–09).

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Id.* (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).

Here, beyond boilerplate and conclusory allegations, Ms. Royer does not allege specific facts sufficient to plausibly plead a First Amendment retaliation claim. *See Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025, at *11 (3d Cir. Mar. 1, 2022) (granting the defendants' motion to dismiss where the "allegations in the amended complaint"—that the defendants took "retaliatory action" against the plaintiff because of "a religious practice" in "violation of the First Amendment"—did "little more than parrot the elements of a First Amendment retaliation claim"). Ms. Royer's "formulaic recitation of the elements of" this claim receive no weight in the plausibility analysis. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675).

Because Ms. Royer has failed to allege facts supporting the existence of a constitutional violation, Defendants are entitled to qualified immunity with respect to the First Amendment retaliation claim at Count VI. The Court will therefore grant Defendants' motion to dismiss Ms. Royer's First Amendment retaliation claim against Officer Thompson and Corporal Robertson in their individual capacities.

### 4. The Fourth Amendment False Arrest Claim and the Fourteenth Amendment False Imprisonment Claim

Ms. Royer alleges that her "Fourth Amendment right was violated in that she was seized, held and arrested by and without [sic] a warrant and without probable cause regarding trespassing." (ECF No. 10 ¶ 111). She also contends that "Corporal Robertson's actions were done without probable cause and substantially interfered with Ms. Royer's liberty interests when she was attempting to retrieve her medical records after being told to come pick them up." (ECF No. 10 ¶ 113). The Court reads these allegations to assert a Fourth Amendment false arrest claim and a Fourteenth Amendment false imprisonment claim under Section 1983, respectively.[9]

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). And regarding false imprisonment, the Supreme Court has made clear that an arrest based on probable cause cannot become the source of a claim for false imprisonment. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). "On the other hand, where the police lack probable cause to make an arrest, the arrestee has a claim under §

---

[9] Ms. Royer does not invoke her Fourteenth Amendment rights explicitly. However, in the Amended Complaint, Count VI is entitled "Violation of First, Fourth and Fourteenth Amendments, 42 U.S.C. Sections 1983 & 1988." The Court interprets Ms. Royer's assertion that her "liberty interests" were "substantially interfered with" to claim false imprisonment under the Fourteenth Amendment.

1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. Of Manalapan*, 47 F.3d 809, 820 (3d Cir. 1994). Because neither party disputes that Ms. Royer was arrested, the viability of both her false arrest and false imprisonment claims hinge on one inquiry: whether probable cause supported her arrest. *See Olender v. Twp. Of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999) (explaining that "false arrest and false imprisonment are essentially the same claim").

Although the issue of probable cause is usually a factual one, a court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to [the p]laintiff, reasonably would not support a contrary factual finding." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). An arrest is performed with probable cause if "at the moment the arrest was made the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright*, 409 F.3d at 602. "Mere suspicion is not enough for probable cause, but an officer is not required to have evidence to prove guilt beyond a reasonable doubt." *Smith v. Angelo*, 765 F. App'x 757, 758 (3d Cir. 2018) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).

Defendants argue that Ms. Royer "has failed to allege sufficient facts to support a claim of false arrest or false imprisonment because the Incident Report shows that there was sufficient probable cause to arrest" her.[10] (ECF No. 16 at 8–9). Ms. Royer counters that "there are several

---

[10] As the Court previously explained, it is improper to consider the facts contained in the Police Report to which Defendants' cite at this stage of the proceeding.

genuine issues of material fact concerning probable cause to arrest Ms. Royer for trespassing."
(ECF No. 19 at 10).

Ms. Royer's factual assertions, however, do not speak to whether a reasonable officer in
Defendants' shoes had "reasonably trustworthy information" sufficient to believe that she "had
committed or was committing an offense." *Wright*, 409 F.3d at 602. Indeed, the majority of Ms.
Royer's relevant allegations go towards whether she was, in fact, trespassing—not whether
Defendants had probable cause to believe she was. (*See, e.g.*, ECF No. 10 ¶¶ 45–48, 51) (alleging
that Ms. Royer "was assured that it was okay to come pick up her medical records from the
hospital," was "never told she was trespassing," and "was lawfully sitting in her vehicle" at the
time of her arrest). These allegations may suggest that Ms. Royer was not engaging in obviously
illegal activity. But they do not support a conclusion that Defendants otherwise lacked probable
cause to arrest her.[11] *See Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (explaining that a
determination as to the existence of probable cause "must be based on 'the totality of the
circumstances'") (quoting *Sharrar*, 128 F.3d at 818).

Ms. Royer also infers that probable cause was lacking because Corporal Robertson "failed
to make a reasonable investigation as to whether [she] was considered a 'trespasser[.]'" (ECF No.
10 ¶ 70). However, an officer is not required to "undertake an exhaustive investigation in order
to validate the probable cause that, in his mind, already exists." *Feldman v. Cmty. Coll. of Allegheny*,
85 F. App'x 821, 825 (3d Cir. 2004) (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8

---

[11] More to the point, whether probable cause exists is not based solely on whether a particular suspect is
clearly engaged in illegal activity.

(3d Cir. 2000)). Again, Ms. Royer's allegations are insufficient to show that Defendants wholly lacked probable cause to arrest her.

Elsewhere in her Amended Complaint, Ms. Royer suggests that probable cause was lacking because "[t]he charge was dismissed due to lack of evidence[.]" (ECF. No 10 ¶ 69). But "[t]he ultimate finding of guilt or innocence, or even dismissal of charges arising out of an arrest and detention has no bearing on whether the arrest was valid." *Pansy v. Preate*, 870 F. Supp. 612, 617 (M.D. Pa 1994) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)), *aff'd*, 61 F.3d 896 (3d Cir. 1995). This allegation therefore fails to support the proposition that Defendants lacked probable cause.

Finally, Ms. Royer alleges that "Defendants knew or should have known that they did not have probable cause to arrest [her] for trespass," and Corporal Robertson "knew or should have known with a reasonably certainty, that Ms. Royer was permitted to come to pick up her medical records." (ECF No. 10 ¶¶ 69, 85). These conclusory allegations are insufficient to support Ms. Royer's false arrest or false imprisonment claims on the basis that Defendants lacked probable cause. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Because Ms. Royer has not plausibly alleged a violation of her Fourth or Fourteenth Amendment rights with respect to her false arrest and false imprisonment claims, Defendants are entitled to qualified immunity on those claims. The Court will grant Defendants' motion to dismiss the false arrest and false imprisonment claims at Count VI asserted against Officer Thompson and Corporal Robertson in their individual capacities.

### 5. The Malicious Prosecution Claim

Ms. Royer alleges that her Fourth Amendment rights were violated "when she was maliciously prosecuted for a crime that Corporal Robertson should have known she did not commit." (ECF No. 10 ¶ 112).[12]

In order to prove malicious prosecution under Section 1983, Ms. Royer must show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [her] favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing [her] to justice; and (5) [she] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009).

Again, Ms. Royer has failed to allege facts sufficient to support the third requirement— that the proceedings against her were initiated without probable cause. Because she therefore fails to plausibly allege a constitutional violation, Defendants are entitled to qualified immunity on the malicious prosecution claim. The Court will grant Defendants' motion to dismiss Ms. Royer's malicious prosecution claim against Officer Thompson and Corporal Robertson in their individual capacities at Count VI.

### 6. The Unreasonable Search Claim

Ms. Royer also asserts an unreasonable search and seizure claim pursuant to the Fourth Amendment at Count VI. (ECF No. 10 ¶¶ 114–16). By Ms. Royer's telling, "Officer Thompson grabbed [her] [phone] from her hand and began scrolling through it, inquiring about various

---

[12] Defendants treat Ms. Royer's malicious prosecution claim as a state law claim in their brief. (*See* ECF No. 16 at 9–10). But because Ms. Royer's only mention of being "maliciously prosecuted" is paired with an alleged violation of her Fourth Amendment rights, (ECF No. 10 ¶ 12), the Court treats Ms. Royer's claim as one arising under Section 1983.

names in her phone and questioning why she wasn't calling those names for rides[.]" (*Id.* ¶ 40). Ms. Royer argues that "Officer Thompson unlawfully seized [her] cellular phone and searched the contents without [her] consent." (*Id.* ¶ 114). She further asserts that her unreasonable search claim is bolstered by the fact that "Officer Thompson did not have a search warrant to seize and search [her] phone[,]" and she "had a reasonable expectation of privacy within the contents of her phone." (*Id.* ¶ 116). Defendants make no arguments on this particular claim.

"[T]he Fourth Amendment protects two types of expectations, one involving searches, and the other seizures. A search occurs when an individual's reasonable expectation of privacy is infringed." *Soldal v. Cook Cnty.*, 506 U.S. 56, 63 (1992). Thus, in order to state a Fourth Amendment claim for an unreasonable search, a plaintiff must show that the defendant's actions (1) constituted a search within the meaning of the Fourth Amendment, and (2) were unreasonable in light of the surrounding circumstances. *See Brower v. Cnty. Of Inyo*, 489 U.S. 593, 595–600 (1989). To assess whether a search is reasonable, the Court balances "the degree to which [it] intrudes upon an individual's privacy and, on the other hand, the degree to which [it] is needed for the promotion of legitimate governmental interests." *United States v. Sczubelek*, 402 F.3d 175, 182 (3d Cir. 2005) (citing *United States v. Knights*, 534 U.S. 112, 119 (2001)).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). And, as relevant to Ms. Royer's claim, the Supreme Court has held that an individual has a reasonable expectation of privacy in the contents of his or her cell phone. *Riley v. California*, 134 S. Ct. 2473, 2494–95 (2014).

Defendants have not argued that Officer Thompson's warrantless search of Ms. Royer's phone was justified by an exception to the warrant requirement. Without a warrant or an applicable exception, Officer Thompson's search of Ms. Royer's cell phone is unreasonable. *See, e.g., United States v. Claude*, No. 12-33, 2013 WL 210249, at *12–16 (E.D. Pa. Jan. 16, 2013). Therefore, taking Ms. Royer's allegations as true, the Court finds that she has stated sufficient facts to support her Fourth Amendment unreasonable search claim. *See United States v. Santiago-Rivera*, No. 3-CR-17-006, 2017 WL 4551039, at *37 (M.D. Pa. Oct. 12, 2017) ("'Thus, a search of the contents of a cell phone without a warrant or an exception to the warrant requirement, would be a violation of the Fourth Amendment.'") (quoting *United States v. Chambers*, No. 15-59, 2017 WL 4005641, at *7 (D. De. Sept. 12, 2017)).

Regarding Defendants' qualified immunity defense, because Ms. Royer has plausibly alleged a Fourth Amendment violation on this claim, qualified immunity's first prong is satisfied. The Court now turns to the second prong, namely, whether Ms. Royer's right to be free from a warrantless search of the contents of her cell phone was clearly established at the time of the subject incident.

As the Court previously explained, for qualified immunity purposes, clearly established rights may be derived from binding Supreme Court and Third Circuit precedent or from a consensus of cases of persuasive authority in the Courts of Appeals. *James*, 957 F.3d at 170. But in that analysis, the Court looks first for "applicable Supreme Court precedent." *Mammaro v. N.J. Div. of Child Prot. &* Permanency, 814 F.3d 164, 169 (3d Cir.), *as amended* (Mar. 21, 2016). Here, the Court finds that the right to be free from a warrantless search of one's cell phone was clearly established by the Supreme Court's 2014 decision in *Riley v. California. See Riley*, 134 S. Ct. at 2494–

95; *see also Dahl v. Kilgore,* No. 20-6392, 2021 WL 3929226, at *7 (6th Cir. Sept. 2, 2021) ("In conclusion, the Supreme Court in *Riley* clearly established [the plaintiff's] right to be free from an unreasonable search of his cell phone."). Accordingly, with both prongs of the qualified immunity inquiry satisfied, Officer Thompson is not entitled to qualified immunity on Ms. Royer's unreasonable search claim at this stage.

Finally, the Court notes that although Ms. Royer's unreasonable search claim is asserted against both Officer Thompson and Corporal Robertson in their individual capacities, the facts alleged in Ms. Royer's Amended Complaint do not suggest that Corporal Robertson was involved in the search of Ms. Royer's cell phone. (*See* ECF No. 10 ¶¶ 114–15) (alleging that "Officer Thompson" searched Ms. Royer's phone and "Officer Thompson" did not have a search warrant). Because Ms. Royer has failed to allege facts sufficient to show that Corporal Robertson violated her Fourth Amendment rights as it pertains to her unreasonable search claim, Corporal Robertson is entitled to qualified immunity on that claim.

Accordingly, Defendants' motion to dismiss will be granted with respect to Ms. Royer's unreasonable search claim against Corporal Robertson. And Defendants' motion to dismiss will be denied with respect to Ms. Royer's unreasonable search claim against Officer Thompson.

Having addressed the Section 1983 claims asserted at Count VI, the Court turns its attention to the Section 1983 claims asserted elsewhere in Ms. Royer's Amended Complaint.

### E.  The Failure to Intervene Claim

Ms. Royer next asserts a failure to intervene claim against Officer Doe and Chief Clark in their individual capacities at Count VII.[13] (ECF No. 10 at 21). Specifically, she alleges "Defendants failed to protect Ms. Royer from [] unnecessary use of force" by "st[anding] there and observ[ing] Corporal Robertson's actions as he unnecessarily battered Ms. Royer." (*Id.* ¶ 127). Defendants argue that Ms. Royer "does not allege that Blaine Clark was present during the subject incident." (ECF No. 16 at 11). But this is incorrect. (*See* ECF No. 10 ¶ 177) ("Defendant, Chief Clark and Officer John Doe were present at the time Ms. Royer was unlawfully arrested and subjected to excessive use of force.").

In order for liability to attach under Section 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *see also id.* at 651 (explaining that this analysis does not change depending on whether the defendants are police officers or corrections officers). Naturally, "the duration of the incident is key to determining whether there was a reasonable opportunity." *El*, 975 F.3d at 335.

With respect to the first element, the Court has already found that Ms. Royer's allegations are sufficient to state a colorable claim of excessive force under the Fourth Amendment. *See supra*

---

[13] The Court notes that the Amended Complaint does not make clear whether Ms. Royer's failure to intervene claim derives from federal or state law. The Defendants treat it as a state law claim in their brief. (ECF No. 16 at 8). But Ms. Royer addresses failure to intervene in the context of qualified immunity in her brief. (ECF No. 19 at 9). The Court is unaware of a cause of action under Pennsylvania law directly addressing an officer's failure to intervene. Therefore, the Court construes Count VII as stating a claim against Defendant officers pursuant to Section 1983.

Section V.B. And Ms. Royer has sufficiently alleged that Officer Doe and Chief Clark were present and did not intervene during the subject incident.

Turning to the second element, Ms. Royer does not describe the length of her encounter with Corporal Robertson in her Amended Complaint. But the Court notes that the length of time to exert the force Corporal Robertson is alleged to have exerted—such as repeatedly slamming Ms. Royer into the pavement and surrounding vehicles while both un-handcuffed and handcuffed—does not suggest a "momentary" incident. *See id.* ("[W]here an incident is momentary, its 'brevity' may 'defeat[] [a] . . . failure-to-intervene claim.'") (quoting *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018)). Therefore, drawing all reasonable inferences in Ms. Royer's favor, her allegations also plausibly allege that Officer Doe and Chief Clark had a reasonable and realistic opportunity to intervene, but did not do so.

Accordingly, Ms. Royer has alleged sufficient facts to support the viability of her failure to intervene claim. With respect to Defendant's qualified immunity defense, taking the facts contained in Ms. Royer's Amended Complaint as true, the Court finds that her constitutional rights were violated. The first prong of the qualified immunity inquiry is therefore satisfied.

Regarding qualified immunity's second prong, the Court finds that there was a clearly established duty to intervene in the face of another officer's use of excessive force at the time of the subject incident. As previously discussed, the Court has already found that—based on the facts alleged in Ms. Royer's Amended Complaint—Corporal Robertson used excessive force against her in a manner that violated Ms. Royer's clearly established constitutional rights. *See supra* Section V.B.

In *Garbacik v. Janson*, the plaintiff alleged that one of the defendant troopers used excessive force in subduing him and that the other failed to intervene. 111 F. App'x 91, 92 (3d Cir. 2004). The defendants, for qualified immunity purposes, argued that it was not clear at the time of the incident in 1997 that Section 1983 liability could lie for failure to intervene. *See id.* at 93. The Third Circuit held "that the duty to intervene on the part of [supervisory and] nonsupervisory employees was clearly established at the time of the incident in this case[.]" *Id.* at 94. Numerous Courts of Appeals decisions, dating back decades, bolster this conclusion. *See Fundiller v. Cooper City*, 777 F.2d 1436, 1441–42 (11th Cir. 1985) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force . . . can be held liable for his nonfeasance."); *Byrd v. Brishke*, 446 F. 2d 6, 11 (7th Cir. 1972) (stating that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge"); *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("A law enforcement officer who knows another officer is using excessive force has a duty to intervene."); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (stating that, in the context of an excessive force claim, "[i]t is 'clearly established' that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence").

Therefore, with both prongs of the qualified immunity inquiry satisfied, the Court finds that Defendants are not entitled to qualified immunity on Ms. Royer's failure to intervene claim. The Court will deny Defendants' motion to dismiss Ms. Royer's failure to intervene claim at Count VIII.

### F. Ms. Royer's State Law Claims

Having addressed all the Section 1983 claims contained in Ms. Royer's Amended Complaint, the Court turns its attention to Ms. Royer's state law claims. Ms. Royer asserts five state law claims against Defendants: (1) false arrest, (2) false imprisonment, (3) assault and battery, (4) abuse of process, and (5) intentional infliction of emotional distress.[14]

#### 1. Immunity Under Pennsylvania's Political Subdivision Tort Claims Act

Defendants assert in their brief that they are immunized from a portion of Ms. Royer's state law claims pursuant to Pennsylvania's Political Subdivision Tort Claims Act (the "PSTCA"). (*See* ECF No. 16 at 9).

Local governments and their employees are generally immune from tort liability under the PSTCA. *See Rivera v. City of Bethlehem*, 855 F. App'x 79, 80 (3d Cir. 2021). Section 8541 of the PSTCA states that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," except as otherwise provided in the PSTCA. 42 Pa. Cons. Stat. § 8541.

Section 8545 further states that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are in the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by [the PSTCA]." *Id.* § 8545.

---

[14] The Court notes that it is not clear from Ms. Royer's Amended Complaint whether these claims sound in state or federal law. However, both parties treat these claims as state law claims in their briefs. (*See* ECF No. 16 at 8–12; ECF No. 19 at 10–14). Therefore, the Court will likewise treat these claims as grounded in Pennsylvania law.

When, as here, an action is "brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee," the PSTCA grants the employee "[t]he defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law." *Id.* § 8546.

However, another provision of the PSTCA provides that "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply." *Id.* § 8550.

Because how the PSTCA's immunity applies depends, in part, on whether the defendant is a municipality or an employee in their official or individual capacity, the Court will address Ms. Royer's state law claims as asserted against each named Defendant.

**2. Claims Against the City of DuBois**

Three of Ms. Royer's state law claims are asserted against the City of DuBois along with other Defendants: (1) false arrest, (2) false imprisonment, and (3) abuse of process. (*See* ECF No. 10 at 13–14, 20). Defendants argue that these "claims against the City of DuBois should be dismissed on the grounds of governmental immunity." (ECF No. 16 at 9).

The PSTCA "renders the city immune from claims based on willful or malicious conduct." *Lory v. City of Philadelphia*, 674 A.2d 673, 675 (Pa. 1996). While an injured party may recover in limited circumstances, that is only when the negligent act of the city falls within one of the enumerated categories of exceptions to immunity. *See* 42 PA. CONS. STAT. § 8542(b)(1)–(9).[15]

Because Ms. Royer's state law claims against the City of DuBois do not fall within the ambit of the PSTCA's exceptions to immunity, those claims are barred by the PSTCA. *See, e.g.*, *Wilson v. Pennsylvania*, No. 13-1529, 2015 WL 1186004, at *27 (W.D. Pa. Mar. 13, 2015) (dismissing state law false arrest, false imprisonment, and assault and battery claims against a city as barred by the PSTCA); *Stursberg v. Morrison Sund, PLLC*, No. 20-1635, 2020 WL 7319546, at *29 (E.D. Pa. Dec. 11, 2020) (defining "abuse of process" as an intentional tort); *Young v. Bethlehem Area Vo-Tech Sch.*, No. 17-3400, 2018 WL 1740367, at *9 (explaining that "intentional tort claims against the City . . . are barred by the Torts Claims Act").

Accordingly, Defendants' motion to dismiss Ms. Royer's state law claims at Counts II, III, and VII will be granted in so far as those claims are asserted against the City of DuBois.

### 3. Claims Against Defendant Officers in Their Official Capacities

Ms. Royer's state law claims for false imprisonment, assault and battery, abuse of process, and intentional infliction of emotional distress are all asserted, at least in part, against either Corporal Robertson or Chief Clark in their official capacities.[16] (*See* ECF No. 10 at 14, 17, 20, 22).

---

[15] The nine categorical exceptions to immunity contained in the PSTCA are: (1) "Vehicle liability"; (2) "Care, custody or control of personal property"; (3) "Real property"; (4) "Trees, traffic controls and street lighting"; (5) "Utility service facilities"; (6) "Streets"; (7) "Sidewalks"; (8) "Care, custody or control of animals"; and (9) "Sexual abuse[.]" 42 PA. CONS. STAT. § 8542(b)(1)–(9). None of Ms. Royer's state law claims fall within the ambit of any of these exceptions.

[16] The Court notes that in Ms. Royer's Amended Complaint she asserts her false arrest claim at Count II against "Matthew D. Robertson, individually and in his individual capacity," along with the City of

Just as it is in the federal context, a "claim against a local official brought against him in his official capacity is essentially a claim against the municipality itself." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 644 (E.D. Pa. 2014). And a judgment against Corporal Robertson or Chief Clark in their official capacities would therefore impose liability on the City of DuBois. *See Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 670 (W.D. Pa. 2010). Because, as previously explained, the PSTCA provides the City of DuBois with immunity against such claims, Ms. Royer's state law claims against Corporal Robertson and Chief Clark in their official capacities are barred.

Therefore, the Court will grant Defendants' motion to dismiss Ms. Royer's claims against Corporal Robertson and Chief Clark in their official capacities at Counts III, V, VII, and IX.[17]

Having addressed Ms. Royer's state law claims asserted against the City of DuBois and Defendant Officers in their official capacities, the Court will now turn its attention towards the state law claims as asserted against Defendants in their individual capacities.

### 4. The False Arrest and False Imprisonment State Law Claims

Ms. Royer also asserts her state law false arrest and false imprisonment claims against Corporal Robertson in his individual capacity. (*See* ECF No. 10 at 13–14.)

Although whether a municipal employee being sued in their individual capacity can be liable under the PSTCA depends, in part, on whether employee's misconduct was willful, the

---

DuBois. (ECF No. 10 at 13). The Court interprets this as asserting a claim against Corporal Robertson in solely his individual capacity. As the Court explains in this portion of its opinion, even if Ms. Royer intended to assert her false arrest claim against Corporal Robertson in his official capacity as well, that claim would be barred by the PSTCA.

[17] The Court notes that because Ms. Royer's claim of intentional infliction of emotional distress at Count IX is only asserted against Corporal Robertson in his official capacity, that claim will be dismissed in its entirety.

Court need not reach the immunity issue regarding Ms. Royer's false arrest and false imprisonment claims because she fails to allege sufficient facts to support the viability of either claim.

Under Pennsylvania law, as under federal law, "false arrest and false imprisonment are essentially the same claim." *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008). Both claims require a plaintiff to show that an arrest or detainment was made without probable cause. *See Renk v. City of Pittsburgh*, 641 A.2d 289, 295 n.2 (Pa. 1994); *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 71 (3d Cir. 2017) (citing *Renk*, 641 A.2d at 293)). Therefore, the Court will rely on its previous probable cause determination to find that Ms. Royer has failed to successfully plead a claim for either false arrest or false imprisonment under Pennsylvania law.

The Court will grant Defendants' motion to dismiss Ms. Royer's false arrest and false imprisonment claims at Counts II and III.

### 5. The Assault and Battery Claim

Ms. Royer's assault and battery claim is also asserted against Corporal Robertson in his individual capacity. Ms. Royer contends that because of Corporal Robertson's alleged use of excessive force she "continues to experience vision impairment, neck and lumbar pain, vertigo and mental anguish." (ECF No. 10 ¶ 103). Defendants argue Ms. Royer has failed to allege the requisite facts to support her claim. (ECF No. 16 at 9).

The Pennsylvania Supreme Court articulated the test applicable to assault and battery claims asserted against arresting officers in *Renk v. City of Pittsburgh*, 641 A.2d 289 (1994). There, the Court explained:

A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.

*Id.* at 293.

Accordingly, the Court's reasonableness analysis under Ms. Royer's excessive force claim is also applicable to her assault and battery claim. *See Salyer v. Hollidaysburg Area Sch. Dist.*, No. 3:16-57, 2018 WL 3579838, at *26–27 (W.D. Pa. July 25, 2018) (explaining that "'[a] claim brought under Pennsylvania law for excessive force by a police officer is a claim for assault and battery'") (quoting *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 744 (E.D. Pa. 2014)). As previously discussed, Ms. Royer's pleading as to her excessive force claim is sufficient at this stage. Ms. Royer has therefore plausibly alleged sufficient facts supporting her assault and battery claim against Corporal Robertson. *See Torres v. Allentown Police Dep't*, No. 13-3066, 2014 WL 4081477, at *30–31 (E.D. Pa. Aug. 18, 2014).

Moreover, the PSTCA does not provide immunity to Corporal Robertson on Ms. Royer's assault and battery claim. Section 8550 of the PSTCA provides that employees of local agencies are not immunized from acts that are "judicially determined" to constitute "actual malice or willful misconduct." 42 PA. CONS. STAT. § 8550. In that context, "[t]he term 'willful misconduct' is synonymous with 'intentional tort.'" *Chizmar v. Borough of Trafford*, 454 F. App'x 100, 100 n.4 (3d Cir. 2011) (citing *Kuzel v. Krause*, 658 A.2d 856, 859 (Pa. Commw. 1995)). More specifically, a police officer must have understood that the tortious action is illegal and intended to commit it nonetheless. *See In re City of Philadelphia Litig.*, 158 F.3d 723, 728 (3d Cir. 1998).

The Court finds that Ms. Royer has pleaded sufficient facts that, taken as true, show Corporal Robertson engaged in willful misconduct during the subject incident. *See Kokinda*, 557 F. Supp. 2d at 594 (explaining that because the defendant officers "may have engaged in willful misconduct in their use of force, they are not at this time entitled to immunity under the PSTCA, and their motions to dismiss the assault and battery claims will be denied"); *Kase v. Wiseman*, No. 93-3076, 1993 WL 409862, at *18 (E.D. Pa. Oct. 12, 1993) ("Because assault and battery constitute willful misconduct, [the defendant] enjoys no [PSTCA] immunity from liability on these claims.").

The Court will deny Defendants' motion to dismiss Ms. Royer's assault and battery claim against Corporal Robertson at Count V.

### 6. The Abuse of Process Claim

Finally, Ms. Royer asserts an abuse of process claim against Corporal Robertson and Chief Clark in their individual capacities. (ECF No. 10 at 20). Ms. Royer alleges that Defendants "knew prior to filing their action against Ms. Royer that she was not guilty of trespass and instead filed a criminal action against Ms. Royer." (*Id.* ¶ 121). Defendants argue that Ms. Royer "fails to allege that the Defendants Robertson and Clark held the requisite intention to coerce some desired outcome through the perversion of the legal process." (ECF No. 16 at 10).

Under Pennsylvania law, "abuse of process is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed." *Naythons v. Stradley, Roman, Stevens & Young LLP*, 339 F. App'x 165, 167 (3d Cir. 2009) (citing *Cruz v. Princeton Ins. Co.*, 972 A.3d 14, 15 n.1 (Pa. Super. Ct. 2009)). To establish a claim for abuse of process a plaintiff must show that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."

*Id.* Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. *Id.*

The Court finds Ms. Royer's allegation that Defendants initiated charges against her knowing she was not guilty of trespass too conclusory to state a viable abuse of process claim. *See, e.g., Polysciences, Inc. v. Masrud*, No. 22-1767, 2023 WL 3377084, at *3–4 (3d Cir. May 11, 2023) (affirming the district court's dismissal of the plaintiff's abuse of process claim because the plaintiff's allegation that, among other things, the defendant proceeded "despite being aware that its lawsuit is meritless" was "too conclusory to support a claim"). And Ms. Royer has alleged no facts that indicate Defendants used the legal process as a tactical weapon to coerce an illegitimate result. *See Gebhart v. Steffen*, 574 F. App'x 156, 160 (3d Cir. 2014) (affirming the district court's dismissal of the plaintiff's abuse of process claim because the plaintiff failed "allege that her criminal proceedings were misused after they were initiated").

Because "there is no cause of action for abuse of process if the [government officer], even with bad intentions, merely carries out the process to its authorized conclusion[,]" Ms. Royer fails to state a claim for abuse of process. *Turkos v. Borough*, 721 F. App'x 208, 215 (3d Cir. 2018). Accordingly, the Court will grant Defendants' motion to dismiss Ms. Royer's abuse of process claim at Count VII.

### G. Punitive Damages

Ms. Royer asserts that Defendants' actions support the award of punitive damages at all Counts except Count IV. (ECF No. 10 at 13–15, 17, 20–23). Defendants argue that Ms. Royer "has failed to plead any facts establishing that the individually named police officers showed

maliciousness, recklessness or callous disregard or indifference to [Ms. Royer's] rights and safety or intentional violations of the law." (ECF No. 16 at 12).

The Court notes that after analyzing each of Ms. Royer's claims, the following will survive Defendants' motion to dismiss: (1) the excessive force claim against Corporal Robertson at Count I, (2) the assault and battery claim against Corporal Robertson at Count V, (3) the unreasonable search claim against Officer Thompson at Count VI, and (4) the failure to intervene claim against Officer Doe and Chief Clark at Count VIII. As is obvious from the Court's previous findings, Defendants' motion to dismiss Ms. Royer's claims for punitive damages at Counts II, III, VII, and IX will be granted.

Regarding Ms. Royer's surviving federal claims, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Supreme Court has clarified that "reckless indifference," in this context, refers not to the egregiousness of the defendant's conduct, but rather to the defendant's knowledge that it may be acting in violation of federal law. *See Kolstad v. American Dental Association*, 527 U.S. 526, 535 (1999)).

The Court has already determined that the unconstitutionality of Defendants' conduct underlying the surviving Section 1983 claims was clearly established at the time of the subject incident. It follows that Corporal Robertson, Officer Thompson, Officer Doe, and Chief Clark acted with reckless or callous indifference to Ms. Royer's federally protected rights. *See Bennis v. Gable*, 823 F.2d 723, 734 (3d Cir. 1987). Accordingly, Defendants' motion to dismiss Ms. Royer's claims for punitive damages will be denied as to Counts I, VI, and VIII.

In terms of Ms. Royer's surviving state law claim, "Pennsylvania cases have adopted a very strict interpretation of 'reckless indifference to the rights of others[.]'" *Burke v. Maassen*, 904 F.2d 178, 181 (3d Cir. 1990). The Pennsylvania Supreme Court has held that "a jury may award punitive damages only where the evidence shows the defendant knows, or has reason to know, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to, that risk." *Id.* (citing *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 (Pa. 1985)).

The allegations surrounding Ms. Royer's assault and battery claim against Corporal Robertson, taken as true, suggest he deliberately proceeded in conscious disregard of a risk of physical harm to Ms. Royer. *See Miller v. TJX Cos.*, No. 19-252, 2019 WL 1168120, at *9 (E.D. Pa. Mar. 12, 2019) (declining to dismiss the plaintiff's claim of entitlement to punitive damages where the plaintiff alleged "he was intentionally assaulted"); *Bonilla v. City of York*, No. 1:14-cv-2238, 2015 WL 1525483, at *29 (M.D. Pa. Apr. 2, 2015) (explaining that the "facts supporting the claim for excessive force also establish Plaintiff's state law claims for assault and battery . . . and leave open the possibility of recovery of punitive damages").[18]

Accordingly, Defendants' motion to dismiss Ms. Royer's claim for punitive damages at Count V will be denied.

## VI.   Scope of Dismissal

When a district court dismisses one or more claims pursuant to Rule 12(b)(6), it must permit the plaintiff the opportunity to amend the complaint unless amendment would be

---

[18] The Court also notes that it is generally premature to dismiss a plaintiff's allegations of recklessness and a claim for punitive damages at the motion-to-dismiss stage, before discovery has been conducted. *See Reilly v. Jones*, No. 3:21-cv-1512, 2022 WL 1508964, at *9–10 (M.D. Pa. May 12, 2022).

inequitable or futile. *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.* And the Third Circuit generally requires courts to grant leave to amend in civil rights cases when a curative amendment is conceivable. *See Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

A portion of Ms. Royer's claims are clearly precluded by applicable law and therefore amendment of those claims would be futile. Specifically, Ms. Royer's state law claims asserted against the City of DuBois at Counts II, III, and VII are barred by the PSTCA. Ms. Royer's state law claims against Defendant officers in their official capacities at Counts III, V, and VII are likewise barred. And Ms. Royer's excessive force claim against the City of DuBois at Count I is barred because a municipality cannot be held liable under Section 1983 pursuant to a *respondeat superior* theory of liability.[19] Accordingly, the Court will dismiss these claims with prejudice.

Moreover, the Section 1983 claims contained in Count VI against Officer Thompson and Corporal Robertson in their official capacities are, as previously explained, claims against the City of DuBois itself. And Ms. Royer's Amended Complaint contains no facts suggesting the City of DuBois harbored a policy or custom that led to any constitutional violation alleged in Count VI. Accordingly, the Court will dismiss the Section 1983 claims in Count VI against the City of DuBois and Defendant officers in their official capacities with prejudice. *See Bakos v. Am. Airlines, Inc.*, 748 F. App'x 468, 475 (3d Cir. 2018) (affirming the district court's dismissal of a claim with prejudice where the plaintiffs had "proffered no facts" supporting their claim).

---

[19] The Court notes that this claim was also duplicative of Ms. Royer's municipal liability claim against the City of DuBois at Count IV.

Because Ms. Royer alleged that Officer Thompson, not Corporal Robertson, undertook the search that gave rise to her unreasonable search claim at Count VI, the Court will also dismiss Ms. Royer's unreasonable search claim against Corporal Robertson with prejudice. *See Oren v. Pennsylvania Dep't of Corr.*, No. 22-1512, 2023 WL 314302, at *3 (3d Cir. Jan. 19, 2023) (affirming the dismissal of claims with prejudice where the plaintiff failed to assert that "individual defendants were personally involved" in the incident underlying his claims).

The Court notes that Ms. Royer's claim for intentional infliction of emotional distress at Count IX is only asserted against Corporal Robertson in his official capacity. (*See* ECF No. 10 at 22). Elsewhere in her Amended Complaint, Ms. Royer asserts her claims against Defendant officers in either their individual capacity or both individual and official capacities. (*See, e.g., id.* at 11, 13–14). Because a curative amendment is conceivable on this claim—namely, asserting it against Corporal Robertson in his individual capacity—the Court will dismiss Ms. Royer's claim at Count IX without prejudice and grant her leave to amend.

As to the remainder of Ms. Royer's state law claims,[20] the Court cannot conclude at this stage that granting Ms. Royer leave to amend would be inequitable or futile because a properly amended complaint could indeed survive a motion to dismiss. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss."). Therefore, in recognition of the "liberal approach to pleading" embodied by Federal Rule of Civil Procedure 15, *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006) (citing FED. R.

---

[20] Specifically: (1) the false arrest claim against Corporal Robertson in his individual capacity at Count II; (2) the false imprisonment claim against Corporal Robertson in his individual capacity at Count III; (3) the abuse of process claim against Corporal Robertson in his individual capacity at Count VII; and (4) the abuse of process claim against Chief Clark in his individual capacity at Count VII.

CIV. P. 15)), the Court will dismiss those claims without prejudice and grant Ms. Royer leave to amend.

Finally, with respect to Ms. Royer's remaining Section 1983 claims,[21] the Court previously concluded that Defendants were entitled to qualified immunity on these claims because the facts alleged by Ms. Royer did not amount to constitutional violations. However, because Ms. Royer may be able to allege facts sufficient to show that Defendants are not entitled to qualified immunity, the Court will dismiss those claims without prejudice and grant her leave to amend. *See Peterson v. Allegheny Cnty.*, No. 21-cv-00078, 2022 WL 280948, at *99–100 (W.D. Pa. Jan. 31, 2022) (granting the plaintiffs leave to amend claims even where it appeared the defendant was entitled to qualified immunity because "Plaintiffs may be able to allege facts sufficient to show [the defendant] is not entitled to immunity").

An appropriate order follows.

---

[21] Specifically: (1) the municipal liability for failure to properly train, supervise, and discipline claim against the City of DuBois at Count IV; (2) the First Amendment retaliation claim against Officer Thompson in his individual capacity at Count VI; (3) the First Amendment retaliation claim against Corporal Robertson in his individual capacity at Count VI; (4) the Fourth Amendment false arrest claim against Officer Thompson in his individual capacity at Count VI; (5) the Fourth Amendment false arrest claim against Corporal Robertson in his individual capacity at Count VI; (6) the Fourteenth Amendment false imprisonment claim against Officer Thompson in his individual capacity at Count VI; (7) the Fourteenth Amendment false imprisonment claim against Corporal Robertson in his individual capacity at Count VI; (8) the malicious prosecution claim against Officer Thompson in his individual capacity at Count VI; and (9) the malicious prosecution claim against Corporal Robertson in his individual capacity at Count VI.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGO L. ROYER, | ) | Case No. 3:22-cv-00061 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW D. ROBERTSON, individually and in his official capacity as a police officer of the City of DuBois, BLAINE CLARK, individually and in his official capacity as a police officer of the City of DuBois, LANCE THOMPSON, individually and in his official capacity as a police officer of the City of DuBois, JOHN DOE, individually and in his official capacity as a police officer of the City of DuBois, and CITY OF DUBOIS, a municipal corporation, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

NOW, this 28th day of September, 2023, for the reasons set forth in the accompanying

Memorandum Opinion, it is **HEREBY ORDERED** that Defendants' Motion to Dismiss at ECF

No. 15 is **GRANTED IN PART** and **DENIED IN PART**, as follows:

(1)  At Count I:

    a.  Defendants' motion is **GRANTED** with respect to Count I as asserted against

       the City of DuBois, which is **HEREBY DISMISSED WITH PREJUDICE**.

    b.  Defendants' motion is **DENIED** with respect to Count I as asserted against

       Corporal Robertson in his individual capacity.

(2) At Count II:

    a. Defendants' motion is **GRANTED** with respect to Count II as asserted against the City of DuBois, which is **HEREBY DISMISSED WITH PREJUDICE**.

    b. Defendants' motion is **GRANTED** with respect to Count II as asserted against Corporal Robertson in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE**. Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to Count II against Corporal Robertson in his individual capacity.

(3) At Count III:

    a. Defendants' motion is **GRANTED** with respect to Count III as asserted against the City of DuBois, which is **HEREBY DISMISSED WITH PREJUDICE**.

    b. Defendants' motion is **GRANTED** with respect to Count III as asserted against Corporal Robertson in his official capacity, which is **HEREBY DISMISSED WITH PREJUDICE**.

    c. Defendants' motion is **GRANTED** with respect to Count III as asserted against Corporal Robertson in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE**. Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to Count III against Corporal Robertson in his individual capacity.

(4) At Count IV:

      a.  Defendants' motion is **GRANTED** with respect to Count IV, which is **HEREBY DISMISSED WITHOUT PREJUDICE.** Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to Count IV.

(5)  At Count V:

      a.  Defendants' motion is **DENIED** with respect to Count V as asserted against Corporal Robertson in his individual capacity.

      b.  Defendants' motion is **GRANTED** with respect to Count V as asserted against Corporal Robertson in his official capacity, which is **HEREBY DISMISSED WITH PREJUDICE.**

(6)  At Count VI:

      a.  Defendants' motion is **GRANTED** with respect to Count VI as asserted against the City of DuBois, which is **HEREBY DISMISSED WITH PREJUDICE.**

      b.  Defendants' motion is **GRANTED** with respect to Count VI as asserted against Officer Thompson in his official capacity, which is **HEREBY DISMISSED WITH PREJUDICE.**

      c.  Defendants' motion is **GRANTED** with respect to Count VI as asserted against Corporal Robertson in his official capacity, which is **HEREBY DISMISSED WITH PREJUDICE.**

      d.  With respect to Ms. Royer's First Amendment retaliation claim:

            i.  Defendants' motion is **GRANTED** with respect to Ms. Royer's First Amendment retaliation claim at Count VI as asserted against Officer Thompson in his individual capacity, which is **HEREBY DISMISSED**

**WITHOUT PREJUDICE.** Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to her First Amendment retaliation claim against Officer Thompson in his individual capacity.

ii. Defendants' motion is **GRANTED** with respect to Ms. Royer's First Amendment retaliation claim at Count VI as asserted against Corporal Robertson in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE.** Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to her First Amendment retaliation claim against Corporal Robertson in his individual capacity.

e. With respect to Ms. Royer's Fourth Amendment false arrest claim:

i. Defendants' motion is **GRANTED** with respect to Ms. Royer's Fourth Amendment false arrest claim at Count VI as asserted against Officer Thompson in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE.** Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to her Fourth Amendment false arrest claim against Officer Thompson in his individual capacity.

ii. Defendants' motion is **GRANTED** with respect to Ms. Royer's Fourth Amendment false arrest claim at Count VI as asserted against Corporal Robertson in his individual capacity, which is **HEREBY DISMISSED**

**WITHOUT PREJUDICE.** Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to her Fourth Amendment false arrest claim against Corporal Robertson in his individual capacity.

f.  With respect to Ms. Royer's Fourteenth Amendment false imprisonment claim:

    i.  Defendants' motion is **GRANTED** with respect to Ms. Royer's Fourteenth Amendment false imprisonment claim at Count VI as asserted against Officer Thompson in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE.** Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to her Fourteenth Amendment false imprisonment claim against Officer Thompson in his individual capacity.

    ii.  Defendants' motion is **GRANTED** with respect to Ms. Royer's Fourteenth Amendment false imprisonment claim at Count VI as asserted against Corporal Robertson in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE.** Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to her Fourteenth Amendment false imprisonment claim against Corporal Robertson in his individual capacity.

g.  With respect to Ms. Royer's Malicious Prosecution claim:

    i.  Defendants' motion is **GRANTED** with respect to Ms. Royer's Malicious Prosecution claim at Count VI as asserted against Officer

Thompson in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE**. Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to her Malicious Prosecution claim against Officer Thompson in his individual capacity.

ii. Defendants' motion is **GRANTED** with respect to Ms. Royer's Malicious Prosecution claim at Count VI as asserted against Corporal Robertson in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE**. Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to her Malicious Prosecution claim against Corporal Robertson in his individual capacity.

h. With respect to Ms. Royer's Fourth Amendment unreasonable search claim:

i. Defendants' motion is **GRANTED** with respect to Ms. Royer's Fourth Amendment unreasonable search claim as asserted against Corporal Robertson in his individual capacity, which is **HEREBY DISMISSED WITH PREJUDICE**.

ii. Defendants' motion is **DENIED** with respect to Ms. Royer's Fourth Amendment unreasonable search claim as asserted against Officer Thompson in his individual capacity.

(7) At Count VII:

a. Defendants' motion is **GRANTED** with respect to Count VII as asserted against the City of DuBois, which is **HEREBY DISMISSED WITH PREJUDICE.**

b. Defendant's motion is **GRANTED** with respect to Count VII as asserted against Corporal Robertson in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE.** Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to Count VII against Corporal Robertson in his individual capacity.

c. Defendants' motion is **GRANTED** with respect to Count VII as asserted against Chief Clark in his official capacity, which is **HEREBY DISMISSED WITH PREJUDICE.**

d. Defendants' motion is **GRANTED** with respect to Count VII as asserted against Chief Clark in his individual capacity, which is **HEREBY DISMISSED WITHOUT PREJUDICE.** Ms. Royer has twenty-eight days from the entry of this order to file an amended complaint as to Count VII against Chief Clark in his individual capacity.

(8) On Count VIII:

a. Defendants' motion is **DENIED** with respect to Count VIII as asserted against Officer Doe in his individual capacity.

b. Defendants' motion is **DENIED** with respect to Count VIII as asserted against Chief Clark in his individual capacity.

(9) On Count IX:

a.   Defendants' motion is **GRANTED** with respect to Count IX, which is **HEREBY**

**DISMISSED WITHOUT PREJUDICE**. Ms. Royer has twenty-eight days from

the entry of this order to file an amended complaint as to Count IX.

**IT IS FURTHER ORDERED** that, with respect to Ms. Royer's claims that have survived

Defendants' motion to dismiss, Ms. Royer may continue to advance her request for punitive

damages at each claim.

**BY THE COURT**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**